# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: AMENDMENT TO THE PENNSYLVANIA RACE HORSE DEVELOPMENT AND GAMING ACT | : | No. 8 MM 2017 |
| | : | |
| | : | |
| | : | |
| | : | |
| PETITION OF: PENNSYLVANIA SENATE, SENATOR JOSEPH SCARNATI III, SENATOR JAKE CORMAN, AND SENATOR JAY COSTA | : | |

## DISSENTING STATEMENT

**JUSTICE WECHT**                                        **FILED: January 20, 2017**

In Mount Airy # 1, LLC v. Pennsylvania Department of Revenue, 2016 WL 6210519 (Pa. Sept. 28, 2016), this Court struck down a key portion of the Pennsylvania Race Horse Development and Gaming Act (the "Act"). Specifically, we held that the Act's "local share assessment" (a tax imposed upon slot machine revenue) violates the Uniformity Clause of the Pennsylvania Constitution. Knowing that several counties and municipalities, which ultimately receive the local share assessment's proceeds, rely upon such revenue to fund important public services, we took the unusual step of staying our decision for 120 days in order to afford the General Assembly an opportunity to enact remedial legislation. It has failed to do so.

On January 12, 2017, two weeks before the scheduled expiration of our stay, Petitioners (collectively, "the Senators") filed with this Court an application for extraordinary relief, wherein they assert that our four-month stay was insufficient. Today, the Court grants the Senators' application, and extends our stay for an additional 120 days. Respectfully, I must dissent from the Court's order, which, in casting a lifeline

to the General Assembly, enmeshes this Court in the legislative process and invites future order-bargaining.

In their application for relief, the Senators set forth myriad reasons for the General Assembly's failure to amend the Act within the 120 days that this Court allowed.[1] For example, the Senators underscore that only twelve legislative "session days" were scheduled during the relevant 120-day period (omitting the fact that other days could have been added at the will of the Senate[2]). They also note that the Senate generally disfavors enacting legislation during the so-called "lame duck session" (although it certainly can do so and presumably continues to go about the people's business). In short, the Senators paint a picture of a legislative body that simply could not find the time to enact a constitutional local share assessment.

In fact, the General Assembly had ample opportunity to amend the Act; it simply lacked the political will to do so.[3] Indeed, as the Senators acknowledge, the Senate swiftly passed a temporary "fix" to the Act's tax scheme in October 2016, only one month after our decision in Mount Airy. That legislation would have imposed a slot-machine tax structure different from the one that we struck down in Mount Airy, and

---

[1] The Senators' arguments imply that the General Assembly was completely blindsided by our decision on September 28, 2016. Although the Senators had no way of knowing the outcome of the litigation, they almost certainly would have known that we had pending before us multiple challenges (filed by separate casinos) to the Act's tax scheme. While perhaps unanticipated, our holding was not unforeseeable.

[2] See 101 Pa. Code § 7.21.

[3] As the Senators recognize in their application for relief, many casinos have entered into agreements with their host municipalities to continue paying the local share assessment even in the absence of a legislative mandate to do so. See Senators' Application for Relief, 1/12/2017, at 3 n.1. The fact that several local governments have found opportunities to broker such deals since we issued our opinion in Mount Airy suggests that the General Assembly had adequate time to amend the Gaming Act's tax scheme had such amendment been prioritized.

would have expired on May 1, 2017, thereby allowing an interim period for crafting of a final bill. See H.B. 1887 PN 4140 (2015-2016). That the Senate's proposed legislation did not become law has nothing to do with this Court, nor with the number of scheduled session days. The reason lies elsewhere.

Instead of passing the Senate's proposal, the House further amended the bill to include language that, among other things, would legalize Internet gambling, regulate fantasy sports betting, and allow gaming in some of Pennsylvania's airports. See H.B. 1887 PN 4145 (2015-2016). This was not the first time that the House passed such a measure. In June 2016, approximately three months before we issued our decision in Mount Airy, the House passed a comprehensive bill that similarly would have expanded legal gambling within the Commonwealth. See H.B. 2150 PN 3607 (2015-2016) (providing for expanded gambling in the Commonwealth, including sports wagering, "interactive gaming," and slot machines in qualified airports). The Senate, which has long disfavored a sweeping gambling expansion, never took up the bill.

The House could have enacted the Senate's temporary no-strings-attached legislation. It did not. Instead, the House added to the proposal a set of reforms that the Senate already had rebuffed in the past. No conference committee was convened to attempt reconciliation of the Senate and House measures. And the problem apparently languished. Now, with three session days remaining until our stay in Mount Airy expires, the Senators—having failed to convince their colleagues in the House to keep slot-machine tax revenue flowing to counties and municipalities until May 2017— turn to this Court with a request for still more time. Stalled in a political traffic jam of

their own making, the legislators ask this Court to build them a detour. We should decline to do so.[4]

It is important to note that the relief the Court grants today is anything but a routine extension of time. Although extending our stay here is nonprecedential in theory, the message sent to the General Assembly—that the decisions this Court issues can be negotiated post hoc—doubtless will endure. Having granted the Senators' application for relief, in other words, these sorts of requests likely will become the rule rather than the exception.

Even more important, staying our decision in Mount Airy effectively allows the Commonwealth of Pennsylvania to defy the Constitution of Pennsylvania, albeit for a limited time. Put differently, as long as our stay continues in effect, some entities will be required to pay a tax that this Court has declared unconstitutional. Mount Airy, 2016 WL 6210519, at *5. That is an extraordinary imposition on taxpayers, as well as a derogation, however temporary, of this Court's authority "to say what the law is."[5] A stay that countenances continued collection of an unconstitutional tax is a tool that the Court should wield with extreme caution and humility. It bears remembering that the coercive power of the state stands behind a tax law. Where the law is unconstitutional,

---

[4] Notably, the General Assembly's deadline for enacting remedial legislation is substantially more flexible than the Senators suggest in their application for relief. Although the provisions that we struck from the Gaming Act required casinos to remit slot-machine taxes daily, the funds are transferred to municipalities only once per quarter. 4 Pa.C.S. §§ 1403(c)(2), (c)(3). With our stay in effect, the most recent quarterly distribution occurred on January 15, 2017. Therefore, so long as the General Assembly passes remedial legislation on or before April 15, 2017, it can ensure that local governments do not miss a single payout. Thus understood, the Senators' requested 120-day extension would actually give the General Assembly until July to enact a constitutional slot-machine tax.

[5] Marbury v. Madison, 5 U.S. 137, 177 (1803).

the judiciary should be loath to allow the government to perpetuate the imposition of that power on citizens.

I do not doubt that the legislative process imposes many difficult and stressful challenges upon our elected lawmakers. But this Court should not, and I daresay properly cannot, ease the burdens of democracy by suspending the Pennsylvania Constitution at the first sign of political gridlock. I respectfully dissent.